UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **JOHN O. KALU**, *et al*, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-05-04069 |
| | § | |
| **ROMEROVSKI CORPORATION,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant's Motion to Dismiss, or to Transfer, and for Abatement and More Definite Statement (Docket # 6). For the reasons set forth below, Defendant's motion is **GRANTED**.

**I. Background**

This case arises from a contract for the sale of fabrics, which Plaintiffs allege that the parties entered into in 1985. Plaintiffs allege that they made payments for the fabrics totaling $235,243.00, by transferring sums of money to the Central Bank of Nigeria on March 13, 1985, December 9, 1985, and April 7, 1987. Thereafter, by letter dated September 23, 1988, Defendant informed Plaintiffs that it had reviewed the promissory notes from the Central Bank of Nigeria, and that the notes were payable over twenty-two years. Defendant indicated that the Central Bank of Nigeria had not respected its obligations to make payments on promissory notes in the past, and that it would apply payments received from the Bank to Plaintiffs' account with Defendant. By letter dated August 22, 1989, Defendant informed Plaintiffs that the Central Bank of Nigeria had changed its commitment to make payments on the promissory notes, and that the Bank would make payments on an installment basis over the next twenty years. Plaintiffs allege that Defendant subsequently shipped them goods worth $46,661.60.

Plaintiffs filed the instant lawsuit on November 29, 2005, asserting claims for fraud, misrepresentation, breach of contract, and violation of the Texas Deceptive Trade Practices Act (DTPA), and seeking an accounting. Plaintiffs contend that the shipment of goods that they received from Defendant was worth approximately $188,581.40 less than the quantity for which they had contracted, and that they have suffered damages in this amount, as well as loss of profits and loss of business reputation. Defendant filed its motion to dismiss on April 11, 2006, asserting, alternatively, that the Court lacks personal jurisdiction over Defendant, that venue in this district is improper, that Plaintiffs failed to give the notice statutorily required by the DTPA, and that Plaintiffs' claims should be dismissed for failure to state a claim upon which relief may be granted. Following a hearing on Defendant's motion to dismiss on May 5, 2006, and having considered the parties' briefs, the Court concludes that it lacks personal jurisdiction over Defendant, and that accordingly, Plaintiffs' suit must be dismissed.

**II. Personal Jurisdiction**

A federal district court sitting in diversity generally conducts a two-step inquiry to determine whether it has personal jurisdiction over a nonresident defendant. First, the Court must consider whether exercising jurisdiction comports with constitutional due process. If due process is met, the Court must next determine whether the forum state's long arm statute confers personal jurisdiction. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003). Because the Texas Long Arm Statute is coextensive with the limitations of due process, however, questions of personal jurisdiction in Texas are analyzed entirely within the framework of constitutional due process. *Id.*; see also TEX. CIV. PRAC. & REM. CODE ANN. § 17.041 et seq. (Vernon 2004).

The Due Process Clause of the Fourteenth Amendment permits a court to exercise personal jurisdiction over a nonresident defendant when "(1) that defendant has purposefully

2

availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The minimum contacts requirement can be met through contacts sufficient to confer either specific or general jurisdiction. *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003). Specific jurisdiction exists "[w]hen a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* (quotations omitted). General jurisdiction can be exercised when a defendant's contacts with the forum state are substantial, continuous, and systematic, though unrelated to the litigation. *Id.*

### A. General Jurisdiction

To make a prima facie showing of general jurisdiction, a plaintiff must produce evidence affirmatively demonstrating that the defendant's contacts with the forum state are substantial, continuous, and systematic. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 217 (5th Cir. 2000). This test is difficult to meet because it requires a showing of extensive contacts between the defendant and the forum state. *Submersible Sys., Inc. v. Perforadora Central, S.A. de C.V.*, 249 F.3d 413, 419 (5th Cir. 2001). If a plaintiff establishes minimum contacts between the defendant and the forum state, then the defendant has the burden of proving that the assertion of jurisdiction is unfair and unreasonable. *Cent. Freight*, 322 F.3d at 384.

Here, Plaintiffs have failed to make a prima facie showing of general jurisdiction over Defendant in the State of Texas. Defendant is a New Jersey corporation, with its principal place of business in New Jersey. Rebecca Rosenbaum, Member of Romerovski Property Holdings, L.L.C., Successor to Defendant, Decl. ¶¶ 1-2. Defendant has never been qualified to do business

in Texas, nor has it ever done business in Texas.  *Id.* ¶ 8.  Defendant has never had an office, telephone number, mail box, employees, agents, or representatives in Texas, and it has never owned any real or personal property located in Texas.  *Id.*  Defendant has never had any monies on deposit in Texas.  *Id.*

In their response to Defendant's motion, Plaintiffs make a vague reference to general jurisdiction in this case, alleging that "[D]efendant has had continuous and systematic contacts with Texas, giving the [C]ourt general jurisdiction over Defendant."  Pls.' Resp. ¶ 14.  Plaintiffs fail to support this claim, however, with any facts or specific information whatsoever regarding Defendant's allegedly continuous and systematic contacts with Texas.  The only specific contact that Plaintiffs allege that Defendant has ever had with Texas relates to the negotiation of the contract at issue in this case, as discussed below.  Such an isolated occurrence does not demonstrate either continuous or systematic contact between Defendant and Texas, and it does not give rise to general jurisdiction over Defendant in this Court.

## *B. Specific Jurisdiction*

A court has specific jurisdiction over a cause of action when "the defendant's contacts with the forum 'arise from, or are directly related to, the cause of action.'"  *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002) (quoting *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001)).  Where jurisdiction is alleged to rest upon a nonresident defendant's contact with a resident of the forum state, a court should evaluate the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" in determining whether the defendant has purposefully availed itself of the privilege of conducting business in the forum state.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985); *see also Stuart v. Spademan*, 772 F.2d 1185, 1193 (5th Cir. 1985) ("[W]e look to the factors of prior

negotiations, contemplated future consequences, terms of the contract, and the parties' actual course of dealing . . . .").

In this case, Plaintiffs assert that Plaintiff George Kalu ("Kalu") was a resident of Houston, Texas at the time that Plaintiffs negotiated the contract with Defendant, and that Kalu communicated with Defendant from Texas. Pls.' Resp. ¶¶ 4-5.[1] Plaintiffs allege that, as part of the negotiations, Defendant regularly communicated with Kalu by phone calls directed to his home in Houston. *Id.* ¶ 5. Plaintiffs also assert that they mailed the signed contract to Defendant from Houston. *Id.* ¶ 16. This is not enough to establish specific jurisdiction over Defendant in the State of Texas.

The Fifth Circuit has repeatedly held that an exchange of communications between a nonresident defendant and a resident party in negotiating a contract, or even in carrying out a contract, is insufficient to establish the minimum contacts necessary to give rise to specific jurisdiction over the nonresident defendant. *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (finding that a nonresident defendant's "extensive telephonic and written communication" with a Texas resident, its contract with the Texas resident, and its sending a revised agreement and checks to Texas in partial performance of the contract did not give rise to specific jurisdiction in Texas); *Stuart*, 772 F.2d at 1192-94 (finding no personal jurisdiction where a nonresident defendant had directed phone calls and letters to a Texas resident, had contracted with the Texas resident, and had shipped products to Texas); *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1028-1030 (5th Cir. 1983) (finding that a nonresident

---

1 Plaintiffs also allege that Kalu learned of Defendant's services from an advertisement in a newspaper. Pls.' Resp. ¶ 4. While advertising or soliciting business in a state may give rise to personal jurisdiction in some circumstances, in the instant case, Plaintiffs do not specify what newspaper contained the advertisement, or whether the newspaper was even circulated in Texas. On the contrary, Rosenbaum's testimony that Defendant has never been qualified to do business in Texas and has never done business in Texas makes it unlikely that the advertisement seen by Plaintiffs was printed in a Texas newspaper. Rosenbaum Decl. ¶ 8. Without additional factual allegations by Plaintiffs regarding the advertisement and its location, the Court cannot construe this as a purposeful contact between Defendant and the State of Texas.

defendant had not purposefully availed itself of the benefits of conducting business in Texas, so as to establish specific jurisdiction, by engaging in negotiations with a Texas resident and sending officers to Texas to finalize the contract). Similarly, the fact that an offer is accepted in the forum state, and accordingly, that the contract is formally created in the forum state, does not by itself give rise to specific jurisdiction over a nonresident defendant. *Hydrokinetics*, 700 F.2d at 1029.

Here, the alleged interactions between Defendant in New Jersey and Kalu in Texas are even more tenuous than those in cases such as *Holt Oil*, *Stuart*, and *Hydrokinetics*, in which the Fifth Circuit found that specific jurisdiction was lacking. Although the parties made telephone calls to and from Texas while negotiating the contract, and although Plaintiffs appear to have signed, or at least mailed, the contract in Texas, the contract itself bore no connection with Texas. Under the terms of the contract, Plaintiffs were to make payment to Defendant in New Jersey, and Defendant was to ship goods to Plaintiffs' company in Aba, Nigeria. The parties do not appear to have contemplated any contractual performance in or involving Texas, nor do they appear to have contemplated any future dealings with each other. While the contractual relationship between Plaintiffs and Defendant was unexpectedly extended to many years by the Central Bank of Nigeria's policy of paying promissory notes in installments, there is no indication that the parties intended any long-term or continuous relationship at the time that they entered into the contract. Additionally, the contract itself does not appear to have contained any choice of law or forum selection provisions, or any other reference to Texas.[2]

Under these circumstances, Defendant cannot be said to have purposefully availed itself of the benefits of conducting business in Texas, nor can Defendant be expected to have

---

2  Plaintiffs have failed to provide the Court with a copy of their contract with Defendant. At a hearing before the Court on May 5, 2006, Plaintiffs' counsel indicated that the contract contained no choice of law provisions.

reasonably anticipated being sued in a Texas court. Plaintiffs have failed to demonstrate the existence of minimum contacts between Defendant and the State of Texas, so as to establish specific jurisdiction.

## C. Fair Play and Substantial Justice

Even where a plaintiff establishes minimum contracts between a defendant and forum state, the Due Process Clause forbids the exercise of personal jurisdiction where it nonetheless would "offend traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987) (quotations omitted); *Cent. Freight*, 322 F.3d at 384. In making such a determination, a court must balance: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Asahi*, 480 U.S. at 113; *Cent. Freight*, 322 F.3d at 384.

As discussed above, Plaintiffs have not established minimum contacts between Defendant and Texas to support either general or specific jurisdiction over Defendant. Even if Plaintiffs had established such minimum contacts, however, this Court's exercise of personal jurisdiction over Defendant would be inconsistent with traditional notions of fair play and substantial justice.

Forcing Defendant to defend itself from suit in Texas would place a great burden on Defendant. Because all of its former employees and records pertaining to its business dealings with Plaintiffs are located in New Jersey or New York, Defendant would have to shoulder the expense of transporting the employees and records to Texas. Rosenbaum Decl. ¶ 11. Additionally, since former employees of Defendant who have personal knowledge of its business

dealings with Plaintiffs are no longer employed by Defendant and cannot be subpoenaed to give testimony at a trial in Texas, litigating this suit in Texas would prejudice Defendant's presentation of its case. *Id.*

Furthermore, while Plaintiff Kalu is a Texas resident, the contract at issue provided that Defendant would ship the goods to Plaintiffs in Nigeria. No part of the contract was to be performed in Texas, and Texas has no distinct interest in having the case litigated here. Similarly, nothing prevents Plaintiffs from seeking relief in New Jersey, where Defendant concedes that personal jurisdiction would be appropriate.[3] Given the location of witnesses and records in New Jersey, this dispute can likely be more efficiently resolved there.

### III. Conclusion

Because this Court does not have personal jurisdiction over Defendant, the Court hereby **GRANTS** Defendant's motion to dismiss. The case is **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.

**SIGNED** this 8th day of May, 2006.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT**

---

3  The Court notes the likelihood that Plaintiffs' suit in any jurisdiction will be barred by the applicable statute of limitations. However, because the Court lacks personal jurisdiction over Defendant, a discussion of the applicable statute of limitations and accrual of Plaintiffs' cause of action would be inappropriate here.